GCC ENTERPRISES v. United States and Ironclad Services 2010-50-75 Mr. Payne, we're ready when you are. Thank you, Your Honor. May it please the Court. This is a case that fundamentally involves what is, I believe, a basic tenet in federal government contracting, and that is that each procurement stands on its own. This was a negotiated solicitation that was issued for an indefinite delivery, indefinite quantity contract because the government wanted to have blue-roof contractors on standby for a period of time over a number of states in case that there would be hurricanes. The contractors weren't guaranteed that there would be any work, and of course there was a possibility if we had a catastrophic storm or a year of storms that there could be a great deal of work. Blue-roof contracting in and of itself is not technically difficult work. It's labor-intensive. A worker climbs up on a ladder and nails a blue tarp onto a roof that's been damaged. The government is looking for contractors who can manage the labor and make sure that the forces are marshaled very quickly should an emergency arise. The solicitation was set aside for service-disabled, veteran-owned small businesses. Now those are very small companies. As a matter of fact, in roofing, in the field of roofing, they have a size standard of no more than $13 million per year average annual revenues over a three-year period. That's small in the construction contracting business. Your basic problem was that your client was fourth in terms of technical competence when that was the most important criterion, right? And you're complaining about the final tradeoff evaluation which didn't include your client, right? Well, that's really a secondary argument, Your Honor. We really believe that our client was second because when the initial source selection evaluation was done by the panel that had been in place to do so, they rated our client second, and it was the second that was so close that we were arguably in a tie with Ironclad who was rated first. And, of course, that becomes important because on the evaluated price comparison, there was a $27 million difference in favor of GCC, Ironclad coming in at around $74 million and ours at $47 million. But, counsel, we re-reviewed the decision to re-evaluate for arbitrary and capricious standards, an incredibly deferential standard, and in this case, the solicitation itself said, and I quote, information submitted by the offeror as well as any other relevant and reliable information obtained from any source. Yes. So why doesn't that allow the government to take information from alternative solicitations or other evaluations by other boards and say, wait a minute, this raises the real question about what we did and did we do it properly? I think that that language is intended to give a source selection official always the right to rely on performance information on other projects, whether they were submitted by the offeror or not. But that's your spin. The language doesn't say that. Under the arbitrary and capricious standard, it's kind of hard for me to accept your spin because I don't get to review it to make my own sense of it. I think it opens up Pandora's box, Your Honor. When you have contractors submitting proposals on negotiated procurements which are inherently subjective, they frequently complain, oh, I submitted a proposal to a different office or a different agency with similar past performance and experience information, and they gave me an excellent rating and you gave me a very good rating, so there must be something wrong. Well, that would only be a very small deviation, very good and excellent are right next to each other on the spectrum for contract review. But what the government found here was multiple fields where the deviation was several levels different. I mean, isn't that a more egregious error than just I thought you should get a 98, he thought you should get a 97? Well, I don't think so, Your Honor, because remember, you're dealing with two different solicitations and two different panels. The solicitation in Florida was a solicitation for- They had all the identical criteria. Yes, but- Two different solicitations and two different panels, but they're supposed to be judging you based on the identical information and identical criteria. Well, that's correct, but there could have been a difference in the sense that one applied to 13 states and one applied to one state. And if the government is going to do it that way, it's interesting that they left out the Texas solicitation, where my client on the same criteria and the same standards was awarded the contract. So clearly, somewhere along the line, people evaluating GCC's proposal believed that it was capable in the state of Texas of receiving the award and being responsible for the blue roof contracting should a hurricane occur. On this 13-state, all-states procurement that's involved in this one, in the first go-round, we're rated out of 22 proposals by a board that didn't know anything about anyone else's evaluation, as normally would be the case. We're rated second, and of course, we're much lower in price. And it's only because the source selection official notices, well, they got a lower rating in Florida, let's take a look at this. And I think, quite frankly, the reason was that the source selection official was concerned that GCC, if it was included in the tradeoff analysis, and if GCC was compared to Ironclad on the basis of its initial proposal, any fair and reasonable tradeoff would have resulted in an award to GCC. Because again, GCC was lower by $27 million. And, you know, that's very significant. It's clear that in these negotiated procurements, even if the technical factors and the aggregate are weighted more heavily than price, price must always be considered. And it's pretty hard, I think, to ignore that great a difference when it's clear, even with the second rating where we were placed. Are you now addressing Judge Lori's tradeoff alternative argument that you made? I just want to make sure I can follow you. Yeah, I'm sorry, Ron. I sort of jumped into it. But I do want to emphasize that even if our client was properly rated 4th, that 4th out of the 22 was still a very high rating. Please recognize some of the reasoning that was provided by the source selection authority in the e-mail messages that are a part of the appendix. He indicated that one of the things that he thought might be wrong was that there was possibly an ambiguity in the request for proposals. He thought that that ambiguity perhaps misled the two. Can you move on to that tradeoff? Sure. Sure. I believe that the tradeoff certainly would have resulted in an award to GCC had the first evaluation been left in place because clearly those evaluations were so close. But assuming that you don't persuade us to your position on that aspect of the case, what is your argument with respect to the tradeoff? If the court does not agree that the first evaluation should have been left in place and it was arbitrary and capricious to change it, then we're left with a situation where out of 22 offers, GCC was rated 4th. Again, getting what was the second highest rating of B if we want to convert it to an AB system, very good. Clearly a company that's capable of performing blue-roof contracting and giving all kinds of credit for its experienced blue-roofing capabilities. Even then— But the SSEP only requires that the next best proposal be considered, correct? Well, I think it's a little vague, Your Honor, and I think it's especially contradictory to a body of law, most of which has been decided before the GAO, which hears a lot of these cases. And even the Federal Acquisition Regulation in FAR Part 15-101 and 308, which clearly implies and states that when you do a tradeoff analysis, you must consider the highest technically rated proposal and among those who are within the awardable range, certainly the lowest price. When you just select those two or three proposals that you feel are the closest technically, but you're leaving out someone else who, in this case, very close technically as well, who just so happens to have a $27 million lower price, that's not a fair and reasonable tradeoff. There needed to be in the file and in the source selection memorandum some sort of an explanation by the source selection authority as to why it was in the government's interest for something like blue-roof contracting to pay a premium of $27 million, even if it meant— I just want to make sure I understand your argument. Are you saying it was legally erroneous not to consider GCC because the FAR or some other law required the lowest price technically acceptable offer to be offered? Or are you saying they've used their discretion under the facts of this case by not considering GCC, but that they could, in general, only look at the top two? I'm trying to appreciate the exact basis of your argument. I think both, Your Honor. I think both are true, but I think there are a number of cases that have held that you must consider the lowest price among the awardable contracts when you're doing a tradeoff analysis because the tradeoff by its nature is called a technical price tradeoff. There are cases that say this, or do you think the FAR or the statute or something explicit governs and makes it erroneous as a matter of law? Or do you just think it's a matter of case law that says this is the way it should be done? I think it's a matter of case law, Your Honor, in that, as I said, most of these cases are cases that are decided by the GAO. One of the cases that was decided by the Court of Federal Claims was the Serco case, which got into that as well. Isn't there a statute that says price must be considered? They can never just make a decision in an award contract on the basis of technological superiority? Yes, the statute does require that price must be an element in every evaluation. And so is your argument that they divorced price because they evaluated you only on technical superiority, and since you came in fourth on that criteria, they violated the statute by not considering price? I believe that that is a valid argument, Your Honor. I'm worried it's your argument. Yes, it is my argument, because I think that they rendered price meaningless by what they did. Mr. Payne, what about Appendix 038, which says that cost price technical tradeoff is required under scenarios B and C, where technical superior proposal has a higher price than the next best. That's true, but those scenarios, Your Honor, as they were laid out in the appendix, were laid out as not being exhaustive and not being the only scenarios that would apply. And certainly, as I said, the Federal Acquisition Regulation anticipates that you'll consider the lowest price and the highest price, and that's not the case. So to the extent that the source selection evaluation plan or the language in the appendix might appear to be limiting, I would offer that it's contradicted by regulation in case law. With the Court's permission, if you have no further questions, I'll reserve my time. We will save it for Mr. Payne. Thank you. Is it Mr. Hibby or Hibby? Mr. Hibby. Hibby, right. Thank you. Do you mind starting in what might be reverse order? Start with the tradeoff first since that's where we left off. Okay. Good morning, and may it please the Court, and since we have left off at the price tradeoff issue, I'd be happy to get into that issue. There's no requirement in the SSEP, the source selection evaluation plan, there's no requirement in the FAR, and there's no requirement in any of the case law that's been cited and sort of referred to during colloquy with the Court, that requires that the lowest bidder should be a part of the price tradeoff analysis. Going back to the source selection plan, which it appears has been conceded that GCC does not qualify under any of the stated Under the FAR, what do you make of that, 15-101-1? It talks about the tradeoff process, and it says, This process permits tradeoffs among cost-to-price and non-cost factors and allows the government to accept other than the lowest-priced proposal. Doesn't that mean the government always has to at least consider, when it's doing the tradeoff, the lowest-priced proposal that is otherwise technically acceptable? Well, it does not say that it requires. It says it permits, and it says the government may. So in that case, it's not a... Well, it doesn't say you may conduct a tradeoff. It says that this process permits tradeoffs among cost and price, meaning once you're into the tradeoff, you can weigh everything, and you don't have to take the cheapest thing. You're allowed to make a tradeoff and say technology's more important. But why doesn't that mean you at least have to be considering the cheapest thing as part of the tradeoff? Well, I think that goes to the discretion of the source selection authority. And in this case, case law says that procurement officials possess substantial discretion during a best-value determination. And that's an example here. There was a price tradeoff analysis that took place in this case, and price was considered from the get-go because... Well, only with regard to the top two. Price wasn't considered. You organized, as I understand it, all of the companies that were acceptable technically in terms of their rating vis-a-vis technology only. And then you said, here are the top two technical proposals. We'll think about their pricing and do a weighing. But my understanding is you never did do any sort of tradeoff or look at GCC's price and try and accommodate that. You are correct that there was no tradeoff clearly between Ironclad and GCC. But there was no requirement for it to occur. And there was actually a tradeoff that did occur. And, Your Honor, I would like to also point out that price was one of the first factors actually in the cut-down of the 22 proposals. The source selection authority, when he presented with the 22 proposals, actually took out everything that was above the government estimate, which was above that number. And that reduced the field to about 12. And then the source selection authority went and said, okay, there are three remaining bidders that had exceptional technical ratings. Remember, GCC does not have any exceptional ratings. They're an above-average proposal, certainly a perfectly good proposal. But it's not necessarily – it's certainly not technically equivalent. And it certainly falls within the discretion of the deciding official, the source selection official, who has a great deal of background in this area, to be able to determine I'm going to consider the top three bidders, technical bidders. And I think we also have to remember that the price tradeoff analysis took place with a bidder that had a considerably – a 25 percent lower price itself and only $9 million higher than GCC's. I think it's a fair analogy to look at those things and say, well, if they're going to make a 25 percent premium, which was the decision by the source selection authority, that that $9 million difference would undergo the same sort of scrutiny. And, Your Honor, it's also important to recall that the – that when we talk about the amount of money here that's been evaluated, the price, this is an IDIQ contract with a ceiling of $50 million. The prices that we have that have been evaluated are prices that – it's not actually what the government's going to pay. The government's not going to pay $74 million for ironclad or $46 million for the proposal from GCC if the contract goes forward. And so we're talking about evaluated prices. So it's not the pure prices that are actually going to be here. And, again, price is – You don't have any reason to think GCC's contract revolvementally costs the government more. I mean this is the only information you have regarding price at the time you're making a decision. That's correct. So – And ironclad's price came in – Under the – 30 percent below the government estimate. But GCC's proposal came in 30 percent below ironclad's. Correct. But it also came in – it's not technically equivalent and it's not up to the standards that – Well, up to the standards, no. I mean the selection committee, as I understand it, evaluated and decided which proposals were technically acceptable. They eliminated eight proposals as being not technically acceptable because those people didn't get at least satisfactory ratings and everything. And so obviously there's been a determination that GCC's proposal would meet the technical needs. Maybe not quite as well as ironclad's, but at a minimum meet them. It weren't decided to be technically inferior or inaccurate or inappropriate. And we're not suggesting that, Your Honor, at all. And we've said in our briefs they proposed an above average proposal perfectly – Then why should you have to consider – look, these are not tax dollars. Why shouldn't you have to consider a proposal 30 percent less than the other proposals? Well, because your tax dollars – it could cost you a lot more money if we have an inferior product and one that is evaluated with more risk. I agree. Why shouldn't you have to look at that, though? That's not – you're telling me the ultimate issue. But I think their problem is you didn't look at that. You didn't ever make an assessment of whether their technical proposal was good enough to justify taking it in light of the 30 percent lower amount. The issue here isn't whether ultimately you should have chosen them, but should you have considered them? Well, Your Honor, I think it's implicit in the source selection evaluation plan that the consideration – that they were considered, but they were not the next best proposal or the next best offer. And that is really the framework that – From a technical standpoint only. They weren't the next best proposal from a technical standpoint because you only ranked according to technical rating. But the source selection evaluation plan, which contemplates a price tradeoff analysis, gives guidance to the source selection authority. And that guidance says you may come across a situation where you have a technically superior proposal, but there's a lower one. The next best proposal is lower or the next best offer is lower or a technically equivalent offer. And the position of the government is that this does not qualify for any of those things. And if it was technically equivalent, then there might have been an argument here, but there's not. And I think that's – we go back to discretion of the source selection authority in determining that this – that GCC did not provide a technically equivalent proposal. There were a couple items that were raised in the reply brief that – well, let me step back for a second. I'd be happy to address the first part of the decision to reevaluate the proposal. I don't know if the Court is interested in hearing that right now. I'm not hearing questions, but you're free to raise what you wish. I think it's important that we at least address it. The source selection authority's decision to reevaluate GCC's proposal wasn't only rational. It was actually necessary. And it was necessary because the source selection evaluation plan – and this is on page 37 of the record – requires the source selection authority to, quote, ensure that the evaluation of proposals is consistent with the source selection plan and the requirements of the RFP. It also requires that the source selection authority, quote, provide the Board with guidance and special instructions for conducting the evaluation and the selection process. And that's exactly what the source selection authority did here. He recognized that the Allstate and Florida boards evaluated the same information concerning the subcontractor team agreements, but arrived at ratings that were two levels apart from one another. And, in fact, in his email, he stated – and this is on page 98 of the record – quote, one contractor with decent experience as a subcontractor who had a teaming agreement was graded as a weakness by one board and a strength by another. The source selection authority, he had a requirement to make sure that the requirements of the RFP and the source selection plan were actually applied. And that's what occurred during this reevaluation. And in terms of looking at that process that went on in the emails that we have, what we see is this was a rational decision as well. The 30 percent requirement is something that is memorialized, again, in the source selection memorandum. But it's important because due to prior experience in blue roof situations and catastrophic emergencies, it's important that the prime contractor shows the ability and capacity to meet these requirements so that these emergency programs can get into play. And when he directed the boards to perform this reevaluation, there was no harmonization. There was no – no one compared notes. The boards did not meet. There was simply a guidance that was from the source selection authority saying, look, there is inexplicable differences here. You have basically static information. The static information is this. Subcontractors – the subcontractor agreements do not change. They're the same in every proposal. And you cannot give too much credit to the subcontractor agreement, and yet you have to give enough credit. And that's why the source selection authority wasn't doing what he should be doing. He was actually consciously looking at the ratings that were coming in and the different solicitations. And, in fact, he made the decision that he couldn't reevaluate it himself. He didn't think that was appropriate. He thought the board should do it and the board should figure it out. And that's exactly what occurred here. And I'd like to make just two more points in closing. The first point is – and it's actually something that was addressed in our colloquy a little earlier. Why would the source selection authority not award a contract to someone that has $46 billion, that is much lower? It would be in the government's best interest to actually do that. But in this case, he's actually – he took – he looked at several solicitations and several prices, and he decided that he had to go with the technically superior one. The only one – But none of those were as low in price as GCC's, and he never looked at GCC's lower price. Well, he had GCC's lower price. He did not perform the price tradeoff analysis because – Well, he had it, but he didn't analyze it. So what's the difference? Well, I don't know that – I think the record doesn't reflect an explicit analysis of it, but certainly that information was before him in his source selection memo. And we also have to go back to the fact that of all of the proposals, 23 proposals, the only one to get an exception for item A, which is significantly the most important factor, was indeed Ironclad. And at bottom, GCC submitted an above-average proposal, but in light of the fact that Ironclad's proposal was – price was approximately $34 million less than the government estimate, and that the SSA exercised rational business judgment in awarding the contract, and the trial court's decision affirming that award should be upheld. Thank you. Thank you, Mr. Harvey. Mr. Payne has a couple minutes. Thank you, Your Honor. I think it is important to take a look for just a minute at why GCC was downgraded from the first evaluation to the second one. They were downgraded because the source selection authority came to the conclusion that GCC was relying too heavily on its teaming subcontractor. Now, there's something disingenuous about that whole thought process. These are large – this is a large dollar value contract where a service-disabled veteran-owned small business firm is pretty much required to team in order to be able to compete. And, in fact, the solicitation encourages teaming, includes it as an evaluation factor, and says that the government recognizes the integrity of teaming arrangements. So, on the one hand, GCC is given credit for its teaming, and then later GCC is discredited for relying too heavily on its teaming partner. Well, there was no evaluation factor degree of reliance on teaming partner. It's the team that gets evaluated. GCC clearly had an excellent management plan, received a very good rating for that. Originally, it received an excellent rating for it. The things that resulted in the lower rating of GCC, in my opinion, were arbitrary and capricious to the degree that they relied upon GCC's use of a qualified teaming partner, the very thing which the solicitation invited. Government counsel comments that, well, this might not really be a $74 million contract. Well, we don't know that. In a time of emergency, the government has been known to, by modification, raise the limits of a contract. And even if it was only $50 million, you get more blue-roof contracting from GCC for $50 million than you do from Ironclad because GCC quoted lower unit prices. So price is very important. The ratings that came in, as Mr. Hyde says, were being reviewed as they came in. That was apparently true of the Florida ratings, not the Texas ratings that were higher. What we don't have here is the SSA saying to the evaluation panel, why wasn't your rating of GCC even higher because of the ratings that he got in Texas? Thank you. Thank you, Mr. Payne. We will take the case under advice.